J-S68016-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RONALD WALLACE | : | |
| | : | |
| Appellant | : | No. 480 WDA 2019 |

Appeal from the PCRA Order Entered February 28, 2019
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0006333-2014

BEFORE:   GANTMAN, P.J.E., LAZARUS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY LAZARUS, J.:                    FILED FEBRUARY 10, 2020

Ronald Wallace appeals from the order, entered in the Court of Common Pleas of Allegheny County, dismissing his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.   After careful review, we affirm.

On April 26, 2014, Wallace was charged with six counts each of stalking,[1] terroristic threats,[2] harassment,[3] and intimidation of witnesses or victims,[4] in connection with conduct involving his 21-year-old niece, Krystal

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 2709.1(a)(1).

[2] 18 Pa.C.S.A. § 2706(a)(1).

[3] 18 Pa.C.S.A. § 2709(a).

[4] 18 Pa.C.S.A. § 4952(a)-(b).

Scott. After a three-day trial that concluded on May 29, 2015, a jury convicted

him of all charges. The trial court set forth the facts of this case as follows:

> During the summer of 2013, [Wallace] and his sister, Tammy Ruggieri, re-established contact with one another. [Wallace] had been in and out of [Ruggieri's] life throughout the years, and he had not been around her, or her family, for quite some time. [Ruggieri] was assisting [Wallace] in obtaining an apartment as he was getting his life back in order. [Ruggieri] asked her daughter, [Scott], to give [Wallace] a chance to be a part of her life. [Scott] was 21 years old at the time of her mother's request, and she had not seen [Wallace] since she was approximately ten (10) years old.
>
> At first, [Scott] was excited to build a relationship with [Wallace], and the relationship between them was "fine" and "cordial." At the time, [Scott] was attending school full[-]time at Robert Morris University and was also employed and working as a bartender at McFadden's. As time went on, the nature of their relationship changed dramatically, and for the worse. [Wallace] began to excessively call and text [Scott] over the next few months. [Scott] became afraid of [Wallace's] behavior, and she informed her mother that the excessive contact was "weirding her out." In addition to the sheer number of calls being problematic, [Scott] was concerned and stressed over the fact that [Wallace] would become angry when she would not respond to his calls and messages. [Ruggieri] became involved in the situation, telling [Wallace] that he needed to limit his calls and texts to [Scott] because the frequency of his calls and text messages was inappropriate.
>
> Despite this warning, [Wallace's] behavior continued and escalated, becoming more threatening over the next several months. [Wallace] was angry at [Scott] after her mother spoke with him about the frequency of his contact with [Scott], and he responded by calling and texting [Scott] "numerous times a day" "all day every day." In November of 2013, [Scott] grew so desperate for the contact to stop that she obtained a Protection from Abuse Order (PFA) against [Wallace]. Notwithstanding the court order, [Wallace] did not cease contact. In fact, the situation appeared to grow worse after [Scott] secured the PFA. In January of 2014, [Wallace] left two (2) disturbing voicemails on

[Ruggieri's] work phone. The voicemails were about [Scott] and her bartending job at McFadden's, and they were extremely hostile and threatening in nature. Among other things, [Wallace] falsely accused [Scott] of being a "stripper" and giving "lap dances" at McFadden's. The messages further warned that "the crazy man" was coming for her. After listening to these voicemails, [Scott] became "absolutely terrified" of [Wallace] and called the police.

Although [Wallace] was arrested and taken into custody after the January 2014 voicemails, his contact with [Scott] did not cease. [Wallace] wrote [Scott] numerous letters from the Allegheny County Jail (ACJ), receiving so many that she "lost count." However, there were six (6) letters that [Wallace] sent between April 8, 2014, and May 2, 2014 that were particularly threatening. The majority of these letters were eight (8) pages long and contained writing from the top to bottom of a legal-sized page. In these letters, [Wallace] used highly vulgar, disturbing and threatening language, acknowledging that he knew he was not supposed to be contacting [Scott], and attempting to manipulate and guilt her into dropping the charges against him. These letters terrified [Scott], and she was afraid for her life. Although she was previously a straight "A" student, [Scott] started missing school because of the stress generated by the letters. She lost sleep and focus. [Wallace's] behavior resulted in [Scott] suffering a great amount of fear, and his threats continue to go through her mind "every single day."

Trial Court Opinion, 2/12/16, at 5-7 (citations omitted).

On July 15, 2015, Wallace was sentenced to an aggregate term of seven-to-fourteen years' imprisonment followed by an eleven-year term of probation. Id. at 2. Wallace filed a motion to reconsider sentence, which the court denied on August 26, 2015. Wallace then filed a direct appeal, and our Court affirmed his judgment of sentence on December 23, 2016. Commonwealth v. Wallace, 1486 WDA 2015 (Pa. Super. filed Dec. 23, 2016) (unpublished memorandum). Wallace filed a petition for allowance of

appeal, which our Supreme Court denied on June 20, 2017. Commonwealth v. Wallace, 169 A.3d 581 (Pa. 2017) (Table).

On January 16, 2018, Wallace filed a pro se PCRA petition; the court appointed PCRA counsel, who filed an amended petition on August 27, 2018, raising claims of ineffective assistance of counsel. Following an evidentiary hearing, the court dismissed Wallace's petition on February 28, 2019. Wallace timely filed a notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

On appeal, Wallace presents the following issues for our consideration:

(1)     Was appellate counsel ineffective for not arguing that the evidence was insufficient as a matter of law to prove, beyond a reasonable doubt, that [Wallace] committed the offense of terroristic threats at counts 11, 15, and 23, insofar as the respective letters of April 18, April 21, and May 2, 2014, did not threaten to commit any crime of violence against [Scott], nor did they contain language establishing beyond a reasonable doubt that [Wallace] intended to terrorize [Scott]?

(2)     Was appellate counsel ineffective for not arguing that the evidence was insufficient as a matter of law to prove, beyond a reasonable doubt, that [Wallace] committed the offense of intimidation of a witness at count 9[,] insofar as the content of the letter of April 18, 2014, fails to establish beyond a reasonable doubt that [Wallace] was intimidating, or attempting to intimidate [Scott] from informing or reporting information relating to the commission of a crime?

Brief of Appellant, at 4 (capitalization removed).

Our standard and scope of review for the denial of a PCRA petition are well-settled. We review the PCRA court's findings of fact to determine whether they are supported by the record, and review its conclusions of law to

- 4 -

determine whether they are free from legal error. Commonwealth v. Spotz, 84 A.3d 294, 311 (Pa. 2014). The scope of our review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the trial level. Id.

In both of his claims, Wallace argues appellate counsel was ineffective for failing to raise challenges to the sufficiency of the evidence on direct appeal. The law presumes that counsel was effective, and the burden rests on the appellant to prove otherwise. Commonwealth v. Ousley, 21 A.3d 1238, 1244 (Pa. Super. 2011). To prevail on an ineffectiveness claim, Wallace must establish: (1) his underlying claim has arguable merit; (2) appellate counsel had no reasonable basis for his or her action or inaction; and (3) appellate counsel's error prejudiced Wallace such that there is a reasonable probability the outcome at trial would have been different absent such error. Commonwealth v. Fears, 86 A.3d 795, 804 (Pa. 2014). "Failure to prove any prong of this test will defeat an ineffectiveness claim." Id.

With regard to the second element, an appellant must show that:

> [I]n light of all the alternatives available to counsel, the strategy actually employed was so unreasonable that no competent lawyer would have chosen it. We inquire whether counsel made an informed choice, which at the time the decision was made reasonably could have been considered to advance and protect [the] defendant's interests.

Commonwealth v. Buska, 655 A.2d 576, 582-83 (Pa. Super. 1995). "If counsel's chosen course had some reasonable basis, the inquiry ends and

counsel's assistance is deemed effective." Commonwealth v. Williams, 899 A.2d 1060, 1064 (Pa. 2006).

Here, Wallace has failed to establish that appellate counsel lacked a reasonable basis for choosing not to raise the sufficiency of the evidence challenges specified above. For both ineffectiveness claims, the extent of Wallace's argument regarding appellate counsel's decision is a bald assertion that "counsel could not have had a reasonable basis" for failing to raise the sufficiency challenge. See Brief of Appellant, at 14, 19. Boilerplate allegations, such as these, are insufficient to rebut the presumption that counsel was effective. Commonwealth v. Jones, 815 A.2d 598, 612 (Pa. 2002). Moreover, the record belies Wallace's assertion. See N.T. PCRA Hearing, 2/27/19, at 6.

At the PCRA hearing, appellate counsel testified that she chose to forego the sufficiency claims on direct appeal in order to focus on Wallace's strongest and most viable claim, which related to the alleged deprivation of his right to testify. Id. Although she found the sufficiency challenges to be non-frivolous, appellate counsel believed that it would be more beneficial for Wallace if she zealously argued what she perceived to be his strongest claim. Id. Appellate counsel had concerns that the detailed, fact-heavy analysis necessary to argue insufficiency of the evidence would have overshadowed and detracted from the stronger issue on appeal. Id.

The Supreme Court of the United States has explicitly held that counsel need not, and indeed should not, raise every non-frivolous claim on appeal. Smith v. Robbins, 528 U.S. 259, 288 (2000). Our Supreme Court has also recognized that counsel "may forego even arguably meritorious issues in favor of claims which, in the exercise of counsel's objectively reasonable professional judgment, offered a greater prospect of securing relief." Jones, supra at 613. "This process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." Id. at 614 (quoting Jones v. Barnes, 463 U.S. 745, 751-52 (1983)).

Wallace has failed to establish that appellate counsel had no reasonable basis for her decision not to raise the sufficiency of the evidence challenges. Accordingly, appellate counsel cannot be deemed ineffective, and Wallace is entitled to no relief.[5] Williams, supra at 1064.

Order affirmed.

_____

[5] Furthermore, after a thorough review of the record, the parties' brief, the applicable law, and the well-reasoned opinion of Judge Lazzara, we conclude that Wallace's underlying sufficiency of the evidence challenges do not have arguable merit. There was sufficient evidence to prove Wallace guilty of both terroristic threats and intimidation of a witness or victim where Wallace directly and indirectly threatened to commit crimes of violence against the victim and attempted to guilt, manipulate, and intimidate her into dropping the charges against him and absenting himself from court proceedings. See Trial Court Opinion, 2/12/16, at 12-32.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/10/2020